# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

---

MICHELLE MESSLING,

    Plaintiff,

v.                                                            Case No. 06-C-1233

MICHAEL J. ASTRUE,[1]
  Commissioner of the Social Security
  Administration,

    Defendant.

---

## DECISION AND ORDER

---

### NATURE OF CASE

The plaintiff, Michele Messling, commenced this action on November 29, 2006, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. § 405(g), denying her applications for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. 42 U.S.C. §§ 416, 423, 1381a, 1382c. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.). The plaintiff's appeal will be addressed herein.

---

[1]The court has amended the caption to substitute Michael J. Astrue, Commissioner of the Social Security Administration, as the defendant in this action. On February 12, 2007, Michael J. Astrue became Commissioner of the Social Security Administration. Pursuant to Fed.R.Civ.P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

## **PROCEDURAL HISTORY**

On September 22, 2003[2], the plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she became disabled on August 16, 2003, due to fibromyalgia, chronic tension headaches, chronic fatigue, chronic muscle and bone pain, tempormandibular joint disease, tremors of the right foot and restless leg syndrome. The applications were denied initially and upon reconsideration. Pursuant to the plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on April 3, 2006. The plaintiff, who was represented by counsel, appeared and testified. A vocational expert also testified at the hearing.

In a decision, dated May 23, 2006, the ALJ found that the plaintiff was not disabled. The ALJ concluded that the plaintiff suffers from headaches, fibromyalgia, arthritis in her knees, obesity, low back strain, chronic fatigue syndrome, plantar fasciitis of the right foot and restless leg syndrome, but that she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ further found the plaintiff, who is a young individual with a high school education, cannot perform her past relevant work. However, he also found that the plaintiff has the residual functional capacity (RFC) to perform unskilled, sedentary exertional level work that does not involve climbing, balancing, heights or hazards. The ALJ determined that there are a significant number of jobs existing in the economy that the plaintiff could perform, such as a cashier or security guard monitor. The ALJ's decision became the Commissioner's final

---

[2]The September 22, 2003, date is printed on the Application for Disability Insurance Benefits (Tr. 56), and the Application for Supplemental Security Income (Tr. 328). The signatures on these forms are dated September 24, 2003. The ALJ decision's dates of September 21 and 29, 2003, appear to be incorrect.

- 2 -

decision on November 1, 2006, when the Appeals Council denied the plaintiff's request for review.

The history of this case is well-summarized in the record. Consequently, the court will only engage in a limited discussion of the facts relevant to this decision.

## APPLICABLE LAW

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a plaintiff must demonstrate that her physical or mental impairments prevent her from doing not only her previous work, but any other substantial gainful employment which exists in the national economy considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a plaintiff is so disabled, the ALJ is required to evaluate in sequence: 1) whether the plaintiff is currently unemployed; 2) whether the plaintiff has a severe impairment; 3) whether her impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings), which the Commissioner acknowledges to be conclusively disabling; 4) whether the plaintiff possesses the residual functional capacity (RFC) to perform her past relevant work; and 5) whether the plaintiff is capable of performing any other work existing in significant numbers in the national economy given her age, education, and work experience. See Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Wolfe v. Shalala, 997 F.2d 321, 322-3 (7th Cir. 1993).

If a plaintiff satisfies steps one, two and three, she will automatically be found disabled. If a plaintiff satisfies steps one and two, but not three, then she must demonstrate that she lacks the residual functional capacity to perform her past work. Once step four is satisfied, the burden shifts to the Commissioner to establish that the plaintiff is capable of performing work in the national economy. Knight, 55 F.3d at 313. The plaintiff bears the burden at steps one through four, after which at step five, the burden shifts to the Commissioner. Briscoe v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005); Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004). The process is sequential, and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then the ALJ need not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

To expedite the carrying of this burden, the Commissioner has promulgated 20 C.F.R. Part 404, Subpart P, App. 2, the "Medical-Vocational Guidelines," commonly referred to as the "grid." The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education and work experience) in combination with the individual's residual functional capacity (her maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than her vocationally relevant past work.

Where the findings of fact, made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled. See Haynes v. Barnhart, 416 F.3d 621, 627 (7th Cir. 2005). However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings. Where any of the findings of fact do not coincide exactly with the corresponding criteria of a rule, the rule does not apply in that

- 4 -

particular case and, accordingly, does not direct a conclusion of disabled or not disabled. Id. at 627-8.

Nonetheless, the Commissioner is permitted to conclude that a nonexertional limitation, while present, has no significant impact on an individual's capacity to perform the range of work she is otherwise exertionally capable of performing, making proper application of the grid. Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988) (citing Smith v. Schweiker, 735 F.2d 267, 272 n.3 [7th Cir. 1984]). In any event, there must be reliable evidence of some kind which would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992) (citing Warmoth v. Bowen, 798 F.2d 1109, 1112 [7th Cir. 1986]).

Review of the Commissioner's decision is limited. Sheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act specifically provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993); see 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Blakes v. Barnhart, 331 F.3d 565, 568 (7th Cir. 2003); see also, Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

In reviewing the decision of the Commissioner, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner.

Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). However, even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999).

## **ANALYSIS**

On appeal, the plaintiff asserts that the ALJ misunderstood the nature of fibromyalgia and chronic fatigue syndrome and improperly required objective clinical findings that would not be expected for such disorders. Additionally, the plaintiff contends that the ALJ's conclusions regarding the plaintiff's ability to perform sustained employment are not supported by substantial evidence given the plaintiff's activities of daily living. The plaintiff further asserts that the ALJ failed to properly evaluate the opinions of the plaintiff's treating physicians.

In response, the Commissioner asserts that the ALJ properly assessed the impact of plaintiff's fibromyalgia and chronic fatigue syndrome on her ability to perform unskilled sedentary work. He further maintains that substantial evidence supports the ALJ's decision.

### **1. Whether the ALJ Improperly Required Objective Clinical Findings to Document the Plaintiff's Fibromyalgia**

The ALJ found that the plaintiff has the severe impairments of fibromyalgia and chronic fatigue syndrome and noted that the plaintiff's physicians place her at less than the sedentary exertional level of functioning. (Tr. 16-17). The ALJ further noted, however, that the plaintiff "is able to drive, go shopping and care for her two children." (Tr. 17). The ALJ determined that the "objective medical records and the claimant's reported daily activities do not support [the] limited functioning [found by plaintiff's physicians]." (Tr. 17). She also determined that the plaintiff's complaints "suggest a greater severity of impairment than is shown by the objective medical evidence and all of the above noted factors." (Tr. 17). The ALJ found that the objective

medical evidence does not reflect an individual who is "so impaired as to be incapable of engaging in any substantial gainful work activity." (Tr. 17).

The plaintiff argues that the primary basis for the ALJ's rejection of the plaintiff's testimony and the opinions of her doctors is that neither are, in the ALJ's opinion, supported by objective clinical findings. (Plaintiff's Brief in Support of Reversal of Social Security's Denial of Michele Messling's Claims for Supplemental Security Income and Disability Insurance Benefits [Plaintiff's Brief] at 4). As noted by the ALJ, the plaintiff's MRI revealed no abnormalities and x-rays revealed minor degenerative changes. (Tr. 15-16). The plaintiff contends that the ALJ misunderstood fibromyalgia because the ALJ is looking for objective clinical findings when there will be no objective evidence indicating the severity of fibromyalgia.

In Sarchet v. Chater, 78 F.3d 305, 306-7 (7th Cir. 1996), the court of appeals for this circuit discussed the evaluation of disability claims involving fibromyalgia, a rheumatic disease. The court stated that "fibromyalgia, also know as fibrositis – [is] a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. Id. at 306. As explained in Sarchet, 78 F.3d at 306, the "cause or causes [of fibromyalgia] are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." Id.

The court further stated that the "principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. Id. The court also stated that

- 7 -

"[a]ll these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch." Id. at 307. The court further stated that it is difficult to determine the severity of a patient's condition because of the unavailability of objective clinical tests. Id.

The evidence cited by the ALJ consisted of the plaintiff's testimony, plus the medical records of several treating physicians who examined the plaintiff. (Tr. 15-16, citing Exhs. 5F, 6F, 8F, 11F, 13F and 14F). According to this medical evidence, the plaintiff has been diagnosed with fibromyalgia, chronic fatigue syndrome, restless leg syndrome, obesity and chronic tension and migraine headache pain. Dr. John Ostergaard, the plaintiff's treating physician, diagnosed fibromyalgia, migraine headaches, chronic fatigue syndrome and plantar fasciitis. (Tr. 135, 323). Dr. Edward Reshel, the plaintiff's treating neurologist, diagnosed the plaintiff with fibromyalgia, chronic headache pain and restless leg syndrome. (Tr. 141, 152, 212, 274). Dr. Jeffrey Gorelick, a treating physical medicine and rehabilitation specialist, diagnosed the plaintiff with fibromyalgia syndrome and chronic headache pain. (Tr. 215).

In December 2003, the plaintiff asked Dr. Ostergaard to complete disability forms provided by her lawyer. Dr. Ostergaard told the plaintiff to "fill out her version of it on a separate piece of paper" and make a separate appointment to do the evaluation. (Tr. 173). During the plaintiff's next visit, Dr. Ostergaard noted that they "went through that together . . . and spent most of [their] time working on what she cannot do rather than what she [could] do." (Tr. 172). Dr. Ostergaard completed the Fibromyalgia Syndrome Medical Assessment Form, stating he had been treating the plaintiff for fibromyalgia and headaches since June, 2002, and characterizing the severity of the plaintiff's pain as moderate. (Tr. 135-39).

- 8 -

In this assessment, Dr. Ostergaard opined that the plaintiff's symptoms would cause frequent interference during a typical workday affecting attention and concentration. (Tr. 136). Dr. Ostergaard opined that the plaintiff would be unable to perform routine, repetitive tasks at a consistent pace, detailed or complicated tasks, or fast-paced tasks. (Tr. 137). Dr. Ostergaard limited the plaintiff to 20 minutes sitting and 10 minutes standing after which the plaintiff would have to lie down. Dr. Ostergaard opined that in an eight hour work day, the plaintiff can stand/walk less than two hours and sit about four hours. (Tr. 137). Dr. Ostergaard opined that the plaintiff was unable to meet the competitive standards for performing routine, repetitive work at a consistent pace without an unreasonable number and length of rest periods.

Dr. Ed Reshel, the plaintiff's treating neurologist, also submitted a Fibromyalgia Syndrome Medical Assessment Form similarly assessing the plaintiff. (Tr. 141-46). The plaintiff continued to see Drs. Ostergaard and Reshel for follow-up care and treatment. In June 2005, the plaintiff saw Dr. Ostergaard for a brief assessment. Dr. Ostergaard noted that the plaintiff has not had much improvement in her ability to do most things and referred to the assessment completed in 2003. (Tr. 323).

Thus, the medical records submitted by the treating physicians support the diagnoses of fibromyalgia and chronic fatigue syndrome. (Tr. 135-146, 148, 152, 173, 215-8, 227, 229, 263). The records of Drs. Ostergaard and Reshel demonstrate the pain and "tender spots" symptomatic of fibromyalgia which can be disabling. See Sarchet, 78 F. 3d at 306-07.

In this case, the ALJ expressly found that the plaintiff exhibits fibromyalgia and chronic fatigue syndromes, but refers repeatedly to "objective evidence" that does not justify finding the plaintiff so impaired as to be incapable of engaging in unskilled sedentary employment. (Tr. 17-18). The ALJ, however, fails to explain what objective evidence she is relying upon or requiring.

The ALJ's lack of analysis regarding the plaintiff's fibromyalgia is important because this disease differs from the plaintiff's other illnesses in that "[i]n most cases, there will be no objective evidence indicating the presence or severity of fibromyalgia." Dominguese v. Massanari, 172 F. Supp. 2d 1087, 1100 (E.D. Wis. 2001) (citing Sarchet, 78 F.3d at 307).

If the ALJ meant that the MRI and x-rays were insufficient, then this justification is without merit because the case law is quite clear that where the disabling condition is fibromyalgia, there will be no objective evidence indicating the severity of fibromyalgia. Id.; see also, Kilps v. Barnhart, 250 F. Supp. 2d 1003, 1012-3 (E.D. Wis. 2003); Gister v. Massanari, 189 F. Supp. 2d 930, 934-5, 937 (E.D. Wis. 2001). If the ALJ found the opinions of Drs. Ostergaard and Reshel to be unreliable, she must say so and give her reasons. The ALJ's discussion of the plaintiff's impairment and in particular, fibromyalgia, is inadequate and the ALJ's finding that the plaintiff can engage in unskilled sedentary work is inadequately articulated.

The ALJ did not supply reasons for rejecting the opinions of Dr. Ostergaard and Dr. Reshel and the testimony of the plaintiff, nor does she explain what "objective evidence" demonstrates the plaintiff's functional and vocational limitations. The ALJ must demonstrate the path of her reasoning and the evidence must lead logically to the ALJ's conclusion. See Clifford, 227 F.3d at 872 (noting that the ALJ "must build an accurate and logical bridge from the evidence to [her] conclusion."). Because the ALJ did not build a logical bridge between the evidence and her conclusion regarding the plaintiff's residual functional capacity, the court remands this case for further consideration on this issue.

## 2. Whether the ALJ's Conclusions Regarding the Plaintiff's Activities of Daily Living Are Supported By Substantial Evidence.

A plaintiff's activities of daily living (ADLs) should be taken into consideration when searching for employment within the scope of a plaintiff's physical capabilities. 20 C.F.R. § 404.1529 (c)(3). Listings of "minimal daily activities [however] do not establish that a person is capable of engaging in substantial physical activity." Clifford, 227 F.3d at 872. The Court of Appeals for the Seventh Circuit has "cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006).

The ALJ may not selectively emphasize those activities the plaintiff is capable of performing without also considering the evidence of restrictions on activities that detract from the ALJ's conclusions. See Wates v. Barnhart, 274 F. Supp. 2d 1024, 1039-40 (E.D. Wis. 2003) (ALJ committed legal error where he selectively recited evidence concerning activities of daily living by, for example, noting that the plaintiff went grocery shopping, but ignoring that she only shopped when accompanied by her husband). Moreover, as noted, the ALJ must build an "accurate and logical bridge" between a plaintiff's activities and the ALJ's conclusions concerning the credibility of a plaintiff's testimony and her limitations. Clifford, 227, F.3d at 872.

The plaintiff contends that the ALJ selectively emphasized certain activities, but ignored the activities that detract from the ALJ's conclusion. The plaintiff also asserts that the ALJ did not "build an accurate and logical bridge" between her plaintiff's activities and the ALJ's conclusions regarding the plaintiff's residual functional capacity. The plaintiff further asserts that the ALJ failed to evaluate whether she can perform activities on a sustained basis as opposed to only episodically.

In documents submitted for reconsideration of the denial of benefits, the plaintiff reported that she is in constant severe pain due to fibromyalgia and headaches and has difficulty standing more than 20 minutes. (Tr. 26, 84, 85-7, 90-2, 96-102). At the April 3, 2006, administrative hearing, the plaintiff testified that she was diagnosed with fibromyalgia and chronic fatigue syndrome in the late 1990s or early 2000. (Tr. 354). The plaintiff, who is a high school graduate, lives with her two children, ages eighteen months and eight years, and her boyfriend. (Tr. 345). She stopped working as a cashier at Kohl's in August 2003, because the store closed and due to her health. (Tr. 346). Prior to the store closing, the plaintiff had reduced her hours from full-time to 10 to 15 hours for health reasons. (Tr. 84, 346).

The plaintiff testified that on a daily basis she takes care of her personal hygiene, reads, interacts with her children and watches television. (Tr. 350-51). The plaintiff's boyfriend does the majority of the cooking and dishwashing. (Tr. 350-51). The plaintiff prepares simple food, such as sandwiches or spaghetti, helps with the dishes and separates the laundry. (Tr. 350-51). The plaintiff's boyfriend does the household cleaning, but on a "good day" the plaintiff is able to do light dusting. (Tr. 351). The plaintiff does physical therapy exercises at home. (Tr. 350). She makes out the grocery list and pushes the cart at the grocery store while her boyfriend does the shopping. (Tr. 351). The plaintiff drives her eight-year-old son to and from school. (Tr. 351). She feeds, reads and plays with her other child, but receives assistance in bathing and overall childcare from her mother and boyfriend. (Tr. 352, 355). The plaintiff testified she can stand for 20 minutes and sit for 20 minutes and spends most of the day lying down or sitting with her feet up. (Tr. 352, 355). The plaintiff testified that she spends four or five hours lying down each day and that she has difficulty sleeping due to pain. (Tr. 355-56).

In her decision, the ALJ relied on the plaintiff's activities of daily living to conclude that the plaintiff has the residual functional capacity to perform unskilled, sedentary exertional level work that does not involved climbing, balancing, heights or hazards. The ALJ characterized the plaintiff's testimony as follows: "[t]he claimant stated she was able to manage her own personal hygiene and perform other daily and weekly tasks such as washing some dishes, doing/sorting laundry, light dusting, reading, watching television, driving, back exercises and occasional shopping." (Tr. 16). The ALJ determined that the plaintiff is able to "drive, go shopping and care for her two children." (Tr. 17). The ALJ noted that the plaintiff was able to "participate at the hearing and answer questions in an appropriate manner." (Tr. 17).

A review of the ALJ's decision reveals that she selectively emphasized certain activities, but ignored activities that detracted from her conclusion. The ALJ observed that the plaintiff cares for her two young children. However, the plaintiff testified that she talks with, feeds and reads to her 18-month-old daughter, but that her boyfriend and mother help with child care. The ALJ noted that the plaintiff "stated she sometimes lies down to relieve her pain." (Tr. 17). The ALJ did not acknowledge or discuss the plaintiff's testimony that during a typical eight hour daytime period, the plaintiff typically lies down for four to five hours and that she experiences severe pain on a daily basis. The ALJ also stated that the plaintiff can wash some dishes, but the plaintiff testified that her boyfriend usually washes the dishes. The ALJ observed that the plaintiff engages in occasional shopping, but the plaintiff testified that she makes out the grocery list and pushes the cart while her boyfriend does the shopping.

The ALJ broadly stated that when the plaintiff's complaints about limitations and impairments "are considered in light of all the objective medical evidence as well as the record as a whole, they do not reflect an individual who is so impaired as to be incapable of engaging

in any substantial gainful work activity." (Tr. 17). The ALJ, however, failed to build the required accurate and logical bridge between the plaintiff's daily activities and her conclusion that the plaintiff can sustain performance of full-time competitive employment. Activities such as driving to and from school, pushing a shopping cart, watching television, reading to a child and occasionally dusting do not support the conclusion that the plaintiff can perform full-time competitive work. See Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) (finding that washing dishes, helping children prepare for school, doing laundry and preparing dinner are fairly restricted daily activities that do not undermine or contradict a claim of disabling pain); Dominguez, 172 F.Supp.2d at 1098-99 (finding that the ALJ failed to explain how the plaintiff's activities of arranging flowers, painting pots and reading were inconsistent with the level of the plaintiff's described pain or demonstrative that the plaintiff could perform competitive work).

When assessing a plaintiff's credibility, the ALJ's decision must "be sufficiently specific to make clear . . . the weight [given] to the individual's statements and the reasons for that weight." SSR 96-7p. Here the ALJ did not give reasons for the weight she accorded the plaintiff's testimony, nor are her findings adequately articulated. The ALJ's failure to properly evaluate the credibility of the plaintiff's pain and other symptom testimony and her failure to articulate in her written decision logical and objective grounds for her findings requires a remand for further development of the record.

### 3. Whether the ALJ Failed to Properly Evaluate the Opinions of the Plaintiff's Treating Physicians

The opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses should be given great weight in disability determinations. See Clifford, 227 F.3d at 870. If the ALJ finds that the treating physician's opinion is "well-supported

- 14 -

Case 2:06-cv-01233-PJG   Filed 02/08/08   Page 14 of 18   Document 18

by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record," it will be given controlling weight. 20 C.F.R. § 404.1527(d)(2). More weight is to be given to an opinion if the doctor had a lengthy treatment relationship, had reasonable knowledge about the impairment, presented relevant evidence to support his opinion, and his opinion is consistent with the record as a whole. Id.; see also, Social Security Ruling (SSR) 96-2p ("Treating source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. § 404.1527."). Under the applicable regulations, the Social Security Administration is required to explain the weight it gives to the opinions of treating physicians. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Failure to provide good reasons for discrediting a treating physician's opinion is grounds for remand. See Clifford, 227 F.3d at 870. However, a treating physician may have biases that can impact the disability evaluation. See Dixon v. Massanari, 270 F.2d 1171, 1177 (7th Cir. 2001); Stephen v. Heckler, 766 F.2d 284, 289 (7th Cir. 1985).

The plaintiff argues that the ALJ improperly gave no weight to the opinions of the plaintiff's treating physicians in large part because she improperly interpreted the clinical findings and misconstrued the plaintiff's activities of daily living. The plaintiff's treating physicians opined that the plaintiff was unable to meet competitive standards of employment where the plaintiff would have to perform routine repetitive work at a consistent pace without an unreasonable number and length of rest periods. (Tr. 140, 146). The plaintiff's treating physicians limited the plaintiff to 20 minutes sitting and 10 minutes standing after which the plaintiff would be required to lie down. (Tr. 137, 143). The plaintiff's treating physicians opined that the plaintiff would be able to sit about four hours and stand/walk about two hours in an eight

hour work day. (Tr. 137, 143.) The plaintiff's treating physicians determined that the plaintiff would exhibit frequent impairment-related absenteeism and need frequent unscheduled rest breaks during an eight hour work day. (Tr. 138, 144). The vocational expert at the plaintiff's hearing testified that either of these latter limitations would preclude performance of any full time competitive employment. (Tr. 359-60).

The Commissioner states that "the ALJ did not consider [the fibromyalgia assessment forms completed by Dr. Ostergaard and Dr. Reshel] to be reliable assessments of Plaintiff's true functional capacity because Dr. Ostergaard admitted that Plaintiff supplied a statement of what she could not do, and they completed the form together during an office visit." (Memorandum in Support of the Commissioner's Decision [Commissioner's Memorandum] at 10). The Commissioner further argues that neither Dr. Ostergaard nor Dr. Reshel "offered a basis for the extreme limitations set forth in the opinions," and, therefore, "the ALJ reasonably declined to attach significant weight to the opinions." Id. at 11.

In this case, the ALJ found that the plaintiff "has the residual functional capacity to perform unskilled sedentary exertional level work that does not involve climbing, balancing, heights or hazards." (Tr. 17). The ALJ did not explain what evidence she relied upon to reach this conclusion, nor does she offer any explanation for rejecting the medical opinions provided by the plaintiff's treating physicians which contradict the residual functional capacity to perform unskilled, sedentary work. The ALJ does not refer to any medical opinion that is consistent with her RFC findings. The ALJ must give an analysis of the evidence and "provide some glimpse into her reasoning"; a broad explanation is not acceptable. Dixon, 270 F.3d at 1176. Although the Commissioner offers possible explanations as to why the ALJ did not consider Dr.

Ostergaard's and Dr. Reshel's opinions and assessments, the ALJ did not articulate these "explanations" or rely upon them in her decision.

Similarly, the Commissioner argues that the ALJ's findings are "more consistent" with the findings of the state agency physician, Dr. Baumblatt. (Commissioner's Memorandum at 11). Dr. Baumblatt reviewed the medical evidence of record, including Dr. Ostergaard's comments regarding how the plaintiff helped him complete the opinion form, and concluded that the plaintiff would be able to perform activities consistent with full-time sedentary work. ( Tr. 201-208). The Commissioner further points to the evidence provided by state agency physicians, Dr. Henke and Dr. Spear. However, there is no indication that the ALJ relied upon any of this evidence. In fact, the ALJ does not cite to any of the medical evidence provided by the state agency physicians. The Commissioner's arguments are offered post hoc and must be rejected. See Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002) ("regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ"). Because the ALJ did not properly evaluate the opinions of the plaintiff's treating physicians, a remand is necessary on this issue.

Overall, the ALJ failed to articulate a reasoned basis for the denial of benefits. It is possible that the ALJ correctly found that the plaintiff is not disabled, but without substantial evidence cited in her opinion and an accurate and logical bridge explaining that evidence's relation to her findings, this court cannot uphold her decision. In conclusion, the ALJ's decision fails to permit an informed review by this court, and therefore, a remand for a redetermination of the plaintiff's residual functional capacity is required. On remand, the ALJ should evaluate all of the evidence in the record regarding the plaintiff's fibromyalgia paying particular attention

to Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996) and SSR 96-2p in regard to evaluating the opinions of the plaintiff's treating physicians. If the ALJ makes a credibility determination, she must discuss the applicable factors in accordance with SSR 96-7p.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's appeal be and hereby is **granted**.

**IT IS FURTHER ORDERED** that this case be and hereby is **remanded** to the Commissioner of the Social Security Administration for further proceedings consistent with this decision.

**IT IS ALSO ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 8th day of February, 2008.

BY THE COURT:

    s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge